NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>UNITED STATES,<br><br>               Plaintiff,<br><br>    v.<br><br>CHANGA DAVIS,<br><br>               Defendant.</td><td>Criminal Action No.: 18-cr-641<br><br><br>**OPINION**</td></tr>
</table>

**CECCHI, District Judge.**

## I.  INTRODUCTION

This matter comes before the Court on Defendant Changa Davis's ("Defendant") omnibus pre-trial motion to:  (1) suppress evidence, (2) compel the Government to produce evidence under the Government's disclosure requirements, (3) hold a hearing on the admissibility and use of his prior convictions, and (4) seek leave to file additional pre-trial motions.  ECF No. 39.  The Government filed a brief in opposition. ECF No. 43.  The Court has considered all of the papers and exhibits before it.  For the reasons set forth below, Defendant's motion is denied with respect to his request to suppress evidence and compel early disclosure of materials.  The motion is granted to the extent Defendant seeks leave, if necessary, to file additional pre-trial motions, and to allow a hearing on the admissibility and use of Defendant's prior convictions prior to trial.

## II.  BACKGROUND[1]

---

[1] The following factual recitation is taken from the Jersey City Police Department's investigative report of Defendant's arrest and Defendant's recount of the arrest. ECF No. 39; ECF No. 41-1. The description of the property at issue is based on Defendant's recitation and photographs of the property. *See* ECF No. 39 at 9; ECF No. 49-3.

On February 12, 2018, Jersey City police officers Gary Griffin, Jr., Patrick Egan, and Dane Coleman ("the Officers") were patrolling in plainclothes in unmarked cars in the area of Jewett Avenue between Summit Avenue and Monticello Avenue in Jersey City, New Jersey, due to citizen complaints of narcotics trafficking. *See* ECF No. 39 at 3; ECF No. 41-1 at 1.  During their surveillance, at around 10:00 PM, the Officers saw two individuals—later identified as Defendant and Darryl McFarlan ("McFarlan")—on the steps of 50 Jewett Avenue, Jersey City, New Jersey ("50 Jewett Avenue"). *See* ECF No. 39 at 3; ECF No. 41-1 at 1.  50 Jewett Avenue is a multi-unit dwelling surrounded by a wrought iron fence with a gate that runs parallel to the sidewalk. ECF No. 49-3.  Beyond the gate, there are nine steps that lead up the front of the multi-unit dwelling; the front door is located on the left side of the building and a porch area is located on the right side of the building. ECF No. 39 at 9; *see* ECF No. 49-3.  Defendant concedes that the porch serves as a storage area for personal and home items of the dwelling's residents. ECF No. 39 at 9.

From their vehicles, the Officers then observed Defendant and McFarlan move from the steps of the multi-unit dwelling to the porch area, where McFarlan "roll[ed] a Marijuana Blunt" and Defendant proceeded to smoke it with McFarlan. *See* ECF No. 39 at 3; ECF No. 41-1 at 1. When the officers exited their vehicle and approached the multi-unit dwelling, they smelled the odor of marijuana. *See* ECF No. 39 at 3; ECF No. 41-1 at 1.  The Officers then opened the front gate of 50 Jewett Avenue, approached Defendant and McFarlan, displayed their badges, and announced they were police officers. *See* ECF No. 39 at 3; ECF No. 41-1 at 1.

As Defendant stood up following this exchange, Officer Egan reported to observe a gun in Defendant's left hand. *See* ECF No. 39 at 3; ECF No. 41-1 at 1.  Officer Egan then drew his own weapon and ordered Defendant and McFarlan to show their hands. *See* ECF No. 39 at 3; ECF No. 41-1 at 1.  Subsequently, the Officers reportedly saw Defendant drop his gun on the porch. ECF

No. 41-1 at 1.  Defendant, however, claims that he "did not possess and drop a gun onto the porch floor." ECF No. 41-2.

The Officers then placed Defendant and McFarlan under arrest. *See* ECF No. 39 at 3; ECF No. 41-1 at 1.  The Officers recovered a .32 caliber handgun, marijuana, and two plastic bags containing suspected cocaine from the porch, below where Defendant and McFarlan were standing. *See* ECF No. 39 at 3–4; ECF No. 41-1 at 1–2.  Additionally, McFarlan was found to be in possession of four bags containing suspected cocaine.  *See* ECF No. 39 at 4; ECF No. 41-1 at 1–2.

## III.    LEGAL STANDARD FOR MOTION TO SUPPRESS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. Federal Rule of Criminal Procedure 12(b)(3)(C) permits a defendant to file a motion to suppress evidence before trial, but an evidentiary hearing on such a motion is not held as a matter of course. *See* Fed. R. Crim. P. 12(c)(1) (providing that the court "may" schedule a motion hearing); *see also United States v. Blackman*, 407 F. App'x 591, 594–95 (3d Cir. 2011) ("A district court does not have to hold an evidentiary hearing on a motion just because a party asks for one.") (quoting *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990)).  Rather, an evidentiary hearing is required only if the suppression motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)), *overruled on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013).  A claim is "colorable" if it consists "of more than mere bald-faced allegations of

3

misconduct." *Voigt*, 89 F.3d at 1067.  Further, to receive a pretrial evidentiary hearing, there must be "significant factual disputes."  *United States v. Jackson*, 363 F. App'x 208, 210 n.2 (3d Cir. 2010).

## IV.   <u>DISCUSSION OF MOTION TO SUPPRESS</u>

To raise a constitutional claim in a suppression motion, "a defendant must state that a violation occurred and allege facts that, if true, would support a finding that the evidence in question was obtained in violation of the defendant's constitutional rights." *Hines*, 628 F.3d at 105-06 (citing *United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994)).  To satisfy this requirement, the motion to suppress "must identify a constitutional violation at the outset and connect it to the evidence in question; bare assertions . . . without more, will not suffice." *Id.* at 106.

Here, Defendant argues that his Fourth Amendment rights were violated because the Officers entered a constitutionally protected area of his home without a warrant and seized him unlawfully. ECF No. 39 at 5.  Specifically, he argues that the fenced outdoor area surrounding the multi-unit dwelling in which he lives—including the building's front porch—is constitutionally protected because it constitutes the curtilage of his home, and is thus subject to the Fourth Amendment's prohibition against unreasonable searches and seizures.  However, the Court finds that Defendant's motion does not make the required showing to suppress contraband recovered by the Officers because Defendant has not established that he had a reasonable expectation of privacy in the property searched.  Further, the Officers had probable cause to arrest Defendant and their subsequent seizure of Defendant's contraband was justified by the search incident to arrest exception.

### A.   **Reasonable Expectation of Privacy in the Property Searched**

To invoke the Fourth Amendment's protections, a defendant challenging a search must

demonstrate that he had "an actual or subjective expectation of privacy in the subject of the search or seizure" and that "this expectation of privacy is objectively justifiable under the circumstances." *Free Speech Coalition, Inc. v. Att'y Gen. of the U.S.*, 677 F.3d 519, 543 (3d Cir. 2012) (citations omitted). The defendant has the burden of establishing a reasonable expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure") (citation omitted); *United States v. Donahue*, 764 F.3d 293, 298 (3d Cir. 2014). Defendant has not met that burden here, and thus his motion to suppress must be denied.

The Supreme Court has held that "when it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). The Fourth Amendment's protection of the home includes the curtilage, or the area "immediately surrounding and associated with the home." *Id.* at 7 (citation omitted). "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 307 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)). *Dunn* referred to four factors relevant to the curtilage inquiry: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." 480 U.S. at 301 (1987). The "central component of the inquiry [i]s whether the area harbors intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* (citation omitted).

When assessing the scope of curtilage for multi-unit dwellings, the Third Circuit has held that a defendant "lacks an objectively reasonable expectation of privacy in the common areas of a

multi-unit apartment building." *United States v. Correa*, 653 F.3d 187, 190–91 (3d Cir. 2011) (citations omitted); *see also United States v. Hoover*, 857 F. App'x 721, 722 (3d Cir. 2021) ("[W]e have squarely held that a resident in a multi-unit building does not have a reasonable expectation of privacy in common areas of the building."). For example, in *Correa*, the court held that "a resident lacks an objectively reasonable expectation of privacy in the common areas of a multi-unit apartment building" even if the common areas have a "locked exterior door." 653 F.3d 187, 191–92. And in *United States v. Acosta*, the court reversed the district court's holding that the defendants held a legitimate expectation of privacy in the backyard of a multi-unit dwelling, even though the defendants were the only tenants in the multi-unit dwelling that used the backyard. 965 F.2d 1248, 1257 (3d Cir. 1992). In reaching its holding in *Acosta*, the Third Circuit explained that the *Dunn* factors are diminished in the context of multi-unit dwellings, because tenants of such dwellings "generally have neither the authority nor the investment incentive to take steps to protect a yard from view . . . . Instead, the tenant generally takes the property as he finds it, with or without fencing or other types of obstructions in place." *Id.* at 1256 (citing *United States v. Romano,* 388 F. Supp. 101, 104 & n.5 (E.D. Pa. 1975) ("The concept of curtilage has been significantly modified when applied to a multiple dwelling.")). Further, the *Acosta* panel considered other factors (beyond those enumerated in *Dunn*) and found that the defendants lacked a reasonable expectation of privacy in the backyard because, *inter alia*, the landlord had the ability to grant others permission to use the yard; the landlord and his employees used the backyard freely; and the defendants made very little use of the backyard. *Id.* at 1256–57.

Here, Defendant argues that the curtilage to his home is defined by the gate that surrounds 50 Jewett Avenue, a multi-unit dwelling. ECF No. 39 at 9; ECF Nos. 43-2–43-5. However, he has not met his burden to support such an argument. Although the first two *Dunn* factors weigh in his

6

favor—the proposed area is in close proximity to the multi-unit dwelling and included within an enclosure surrounding the home—the third and fourth factors weigh strongly against him. *See Dunn*, 480 U.S. at 301. Defendant has not alleged sufficiently intimate use of this area (in fact, he alleges only shared storage with other tenants), and he has not represented he took any steps to protect the area from observation by people passing by. *See id.* Moreover, there is no indication that Defendant had exclusive access to this area or a reasonable expectation of privacy therein. His own account highlights that the porch was used by other residents. *See* ECF No. 39 at 9 (stating that the porch contains "bicycles and chairs for the residents, indicating that the residents use this enclosed area for storage of personal and home items"). That the bicycles are chained to the porch also suggests a reduced expectation of privacy more in line with a common area or public sidewalk than a part of his home. *See* ECF Nos. 43-7, 43-8; *Correa*, 653 F.3d at 190. Further, the results of the Government's law enforcement database search for 50 Jewett Avenue demonstrate that the building contains at least three apartments, (ECF Nos. 43-2-43-5), and photographs of the building show there are numerous mailboxes located on the porch, indicating that mail carriers and tenants frequent the area between the front gate and the porch. *See* ECF Nos. 43-6 at 2–3. Indeed, the walkway, steps, and porch "formed part of the path that visitors would naturally take to walk to the front door." *United States v. Stephen*, 823 F. App'x 751, 755 (11th Cir. 2020) (holding that driveway serving two units of a duplex was not part of curtilage). Simply put, the area between the front door and the gate did not harbor any intimate activity associated with the sanctity of a Defendant's home or the privacies of his life. *See Dunn*, 480 U.S. at 310. Rather, this was the common area of a multi-unit dwelling, to which courts have consistently declined to extend Fourth Amendment protection. *See Correa*, 653 F.3d at 190–91.

Defendant's attempts (ECF No. 39 at 9) to analogize this case to *Collins v. Virginia*, 138

S. Ct. 1663 (2018), are unavailing.  There, the Supreme Court held that the warrantless entry onto the defendant's driveway (to lift up a tarp covering a motorcycle) violated Collins's Fourth Amendment rights. *Id.* at 1671.  That holding is inapplicable here because there is no indication that Collins's home was a multi-unit dwelling. *See id.* at 1668–71.  Moreover, the Supreme Court in *Collins* determined that the area where the motorcycle was parked was in fact curtilage because it was a partially-enclosed area and "[a] visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch." *Id.* at 1670–71.  By contrast, here, photographs of 50 Jewett Avenue indicate that a visitor would naturally enter through the gate and porch area to make entry into the multi-unit dwelling. *See* ECF No. 43-6.

Therefore, Defendant's Fourth Amendment rights were not violated when the Officers opened the gate and entered the front area (and porch) of 50 Jewett Avenue.

### B.     Defendant's Arrest and Subsequent Search Incident to Arrest

As explained above, because the common area in Defendant's multi-unit dwelling is not deemed to be within its curtilage—and thus does not receive the constitutional protections of the home—the Fourth Amendment was not implicated by the Officers' initial entry past the wrought iron gate.  Consequently, Defendant's arrest in the multi-unit dwelling's common area and the subsequent search (and ultimate seizure) of Defendant's contraband were lawful because: (1) the arrest was supported by probable cause, as the Officers observed criminal activity—illicit drug use—in plain view;  and (2) the search was incident to that arrest.  *See United States v. Bush*, 647 F.2d 357, 366 (3d Cir. 1981) (confirming the validity of warrantless arrests in public if supported by probable cause and of warrantless searches incident to those arrests).

The plain view doctrine permits warrantless seizures of contraband if:  (1) the officers "did

not violate the Fourth Amendment in arriving at the [p]lace from which the evidence could be plainly viewed;" (2) the seizing officer had a lawful right of access to the evidence; and (3) the incriminating nature of the evidence was immediately apparent. *Id.* at 136–40. "Immediately apparent" means that officers had probable cause to believe an object was contraband, based on an initial plain observation without further inspection. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *see also United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) ("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish . . . probable cause.").

Here, all three elements of the plain view doctrine are satisfied. First, the officers lawfully approached 50 Jewett Avenue while surveilling the area in response to complaints of narcotics trafficking, and in doing so, the officers observed Defendant and McFarlan on the porch of 50 Jewett Avenue from a public street and sidewalk, locations where they had the lawful right to be present. *See, e.g.*, *Zavec v. Collins*, No. 16-cv-347, 2017 WL 3189284, at *6 (M.D. Pa. July 27, 2017) (finding that officers' observations from a public sidewalk into a home did not violate the Fourth Amendment) (citations omitted). Second, as explained above, the Officers had lawful access to the evidence, as Defendant and McFarlan were smoking marijuana in public, outside the curtilage of the multi-unit dwelling. Third, the Officers observed Defendant and McFarlan smoking marijuana, and smelled the marijuana odor from the public sidewalk. *See* ECF No. 39 at 3; ECF No. 41-1 at 1. The marijuana odor immediately confirmed the illicit nature of their conduct, which created probable cause for the arrest of Defendant and McFarland. Given that the Officers gained probable cause by plainly viewing (and smelling) the illegal conduct and could legally access the evidence by entering the common area of the multi-unit dwelling, the seizure was lawful.

Thereafter, the firearm and additional contraband were recovered pursuant to the search incident to arrest exception. Law enforcement may conduct a warrantless search of an arrestee even if they have no reason to believe that the arrestee possesses weapons or evidence. *See New York v. Belton*, 453 U.S. 454, 461 (1981).  The scope of the search includes the area within the arrestee's immediate control, "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *See Chimel v. California*, 395 U.S. 752, 763 (1969).  Given that the firearm and contraband were located directly below where Defendant and McFarlan were standing and within their immediate control, the search and seizure of those items was within the scope of a search incident to arrest.[2] *See id*.  Accordingly, Defendant's Fourth Amendment rights were not violated.

### C.     Request For Evidentiary Hearing

Defendant requests an evidentiary hearing to determine whether he possessed a firearm during the relevant interaction with police. ECF No. 39 at 6.  However, such a hearing is unwarranted because Defendant does not raise any "issues of fact material to the resolution of the defendant's constitutional claim" requiring a hearing. *See Hines*, 628 F.3d at 105.  To the extent that Defendant's own recitation of the facts differs from the Government's in that Defendant alleges he never possessed or dropped a gun (*see* ECF No. 39 at 4; *compare* ECF No. 39 at 3–4, *with* ECF No. 43 at 4–6), such an assertion does not alter the Fourth Amendment analysis here. Once the Officers observed Defendant in plain view engaging in criminal conduct in the common area, the arrest and seizure of contraband found incident to that arrest—whether it was a gun or

---

[2] The Court notes, as explained directly below, that Defendant contests that he possessed or dropped a gun during the interaction with law enforcement. ECF No. 41-2.  In assessing whether the Officers' search of the area immediately around Defendant and the seizure of any contraband was lawful, this dispute is not material because the Officers' actions are justified by the search incident to arrest exception regardless of whether any contraband was recovered.

anything else—passed constitutional muster.[3] Thus, Defendant does not show that there are any contested issues of fact that are material in resolving Defendant's constitutional claim that his Fourth Amendment rights were violated.  Therefore, an evidentiary hearing is not required and Defendant's motion to suppress the evidence is denied.

## V.     **MOTION TO PRODUCE**

Defendant also made several requests for production, such as requests that the Government: (1) produce any exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including favorable or useful evidence concerning agents and law enforcement personnel; (2) identify any evidence of other crimes, wrongs, or acts committed by Defendant that the Government intends to present at trial under Federal Rule of Evidence 404(b); (3) disclose expert reports, expert qualifications, and summaries of expert testimony; and (4) produce material under the Jencks Act (18 U.S.C. § 3500) in advance of trial along with the rough notes of the law enforcement personnel involved. ECF No. 39 at 15–20.  Defendant also seeks a hearing on the admissibility and use of his prior convictions pursuant to Federal Rule of Evidence 609. *Id.* at 18–19.  The majority of these requests are either moot or premature.  The Government represents that it is aware of its various disclosure and preservation obligations, and further represents that it has and will promptly abide by these various requirements as they become due. ECF No. 43 at 16–18 (explaining the Government is aware of and will comply with its *Giglio* obligations, its obligations to preserve and produce rough notes, its obligations under *Jencks*, and its obligation to produce exculpatory evidence).  The Government further does not oppose Defendant's request for a hearing

---

[3] Insofar as Defendant maintains he did not possess or drop a gun (ECF No. 41-2), even though that claim does not bear on the Fourth Amendment analysis, it is a question of fact for the jury that will be determined at trial and bear upon the ultimate resolution of the felon-in-possession charge against Defendant.

on his prior convictions under Rule 609 prior to trial, if one becomes necessary. *Id.* at 20.  Nor does Defendant contend that the Government has failed to abide by its various disclosure or preservation obligations. *See* ECF No. 39.  Further, Defendant's request for disclosure of 404(b) evidence is premature; trial is scheduled to commence in approximately one month. *See United States v. Morris*, No. 07-cr-72, 2008 WL 4154846, at *3 (W.D. Pa. Sept. 9, 2008) (concluding that notice seven to ten days before trial is generally sufficient).  Accordingly, Defendant's motion is denied at this time.  Defendant may renew these motions to the extent he contends in the future that the Government has failed to abide by its discovery and disclosure obligations.

Finally, Defendant seeks leave to file additional motions as they become appropriate. ECF No. 39 at 21.  The Government does not oppose this request insofar as the motions are based on information unknown prior to the previous pre-trial motion deadline. ECF No. 43 at 21; *see also* ECF No. 13.  The Court will consider the propriety of any additional motions as they are filed, and Defendant is granted leave to file additional motions as needed.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, no evidentiary hearing is necessary, and Defendant's motion (ECF No. 39) is DENIED in part and GRANTED in part.  Defendant's motion to suppress is DENIED in its entirety. Defendant's motion to produce is DENIED to the extent it seeks to compel early disclosure of materials and GRANTED to the extent that Defendant may seek leave, if necessary, to file additional pre-trial motions and to request a hearing on the admissibility and use of Defendant's prior convictions prior to trial.  An appropriate Order accompanies this opinion.

**DATED: OCTOBER 6, 2022**

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**